**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

JAMES PIPPIN,                        :

                                   : **Case No. 2:17-cv-598**

        **Plaintiff,**          :

                                   : **CHIEF JUDGE ALGENON L. MARBLEY**

     **v.**                  :

                                   : **Magistrate Judge Vascura**

CITY OF REYNOLDSBURG, *et al.*,   :

                                   :

       **Defendants.**      :

## ORDER & OPINION

This matter comes before the Court on Motions to Dismiss by Defendants City of Reynoldsburg and Chief O'Neill (ECF No. 42) and Defendant Shane Mauger. (ECF No. 43). In response, Plaintiff has filed a memorandum contra and Defendants have each filed a response.[1]

For the reasons below, Defendants' Motions are **GRANTED IN PART and DENIED IN PART**.

---

[1] In a telephonic status conference on June 13, 2019, this Court informed the parties that it would be staying consideration of this matter pending potentially dispositive cases then under consideration at the Supreme Court. The Supreme Court decided those cases in June 2019. Thereafter, this Court resumed its consideration of this matter. Defendants filed a supplemental brief (ECF No. 55), offering an argument about the relevance to this case of the newly-decided Supreme Court cases and reciting arguments made in briefing in the Motion to Dismiss. Plaintiff filed a response to this supplemental brief, which addressed Defendant's substantive arguments as well as the Supreme Court decisions. (ECF No. 57). Defendants accordingly filed a reply to this substantive brief, hoping to get the last word. (ECF No. 58). This Court has taken into consideration the parties' first filings on the Motion to Dismiss, Defendant's supplement on the relevance of the Supreme Court cases, and Plaintiff's brief inasmuch as it discusses the Supreme Court cases. The parties' attempts to use the second round of briefing to discuss substantive matters that were, or should have been, raised in the first round of briefing was not considered by this Court at this stage. The portions of these filings that do not address the reason for the stay and instead raise new arguments or revive old arguments are therefore stricken.

# I.    BACKGROUND

Plaintiff James Pippin is an African-American man who lives in Ohio. Pippin was arrested on May 19, 2015 pursuant to an eight-count indictment ("First Indictment") delivered by an Ohio Grand Jury in April 2015 charging him with violations of drug related crimes. (ECF No. 11 at 5). In September 2015, Pippin was sentenced to a term of 54 months' incarceration. However, on December 6, 2016, the Chief Assistant Prosecuting Attorney of Fairfield County filed a *nolle prosequi*, dismissing the indictment against Pippin, who was subsequently released from prison. Pippin was later re-indicted on July 24, 2017 ("Second Indictment"); on May 15, 2018, he pleaded guilty to one count of the Second Indictment.[2]

The First Indictment indictment was *nolle prossed* because of the officers who worked on Pippin's case. In 2016, the police officers who worked on Plaintiff's case, Shane Mauger and Tye Downard, were investigated for various crimes committed in their capacity as police officers. (ECF No. 42 at 3). Defendant Shane Mauger pleaded guilty to violations of 18 U.S.C. § 241 for conspiracy to deprive individuals of their civil rights and 18 U.S.C. § 666(a)(1)(A) Federal Program Theft. Defendant Mauger was sentenced by this Court and is currently serving a thirty-three month sentence.   (*USA v. Mauger*, 2:16-cr-00091, ECF No. 20). Tye Downard, the other officer, died by suicide before charges could be brought against him. Plaintiff filed a motion to reopen his case and he was *nolle prossed*.

Plaintiff then brought this suit against Mauger; Jim O'Neill, Chief of the Reynoldsburg Police Department; the City of Reynoldsburg; Fairfield County; and the prosecutor in Fairfield, Kyle Witt. (ECF No. 11). In his complaint, Plaintiff alleges that Mauger and Downard

---

[2] Plaintiff was later the subject of a controlled buy, which led to the Second Indictment and his subsequent incarceration. In the instant case, however, Plaintiff does not challenge the validity of that controlled buy or the Second Indictment. (ECF No. 44 at 4-5).

orchestrated his arrest by planting illegal drugs on his property, searching his residence, and then seizing his cash, jewelry, electronics in violation of the constitution. (ECF No. 11 at 7). Plaintiff alleges that as Mauger and Downard "rampage [sic] through the constitutional rights of Reynoldsburg citizens, such as Plaintiff," Reynoldsburg and Chief O'Neil ratified and failed to exercise supervisory responsibility for their actions, leading to violations of Plaintiff's constitutional rights. *Id.* at 8. Further, Plaintiff alleges that immediately after Pippin requested compensation from Reynoldsburg for his unlawful arrest, prosecution, and incarceration, Witt re-indicted Pippin to prevent and dissuade him from pursuing his claims in court. *Id.*

Fairfield County and Kyle Witt were dismissed by agreement of the parties pursuant to Rule 41. (ECF No. 37). The City of Reynoldsburg and Chief O'Neill filed a Motion to Dismiss (ECF No. 42), as did Mauger (ECF No. 43), to which Plaintiff filed memoranda in opposition (ECF Nos. 44, 45) and to which the Defendants filed replies. (ECF Nos. 46, 47). This case was briefly stayed in June 2019 pending the Supreme Court's consideration of potentially dispositive matters. In August 2019, after those cases were decided, this Court resumed consideration of the case and the parties each filed a supplemental brief. (ECF Nos. 56 and 57). Defendant City of Reynoldsburg thereafter filed a reply. (ECF Ho 58). This case is ripe for review.

## II.     STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), the Court may dismiss a cause of action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Such a motion "is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958-59 (6th Cir. 2005). Thus, the Court "must construe the complaint in the light most favorable to the plaintiff" and "accept all well-pled factual allegations as true[.]" *Ouwinga v. Benistar 419 Plan Servs.,*

*Inc.*, 694 F.3d 783, 790 (6th Cir. 2012). If more than one inference may be drawn from an allegation, the Court must resolve the conflict in favor of the plaintiff. *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). The Court cannot dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.*

Generally, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The allegations need not be detailed but must "give the defendant fair notice of what the claim is, and the grounds upon which it rests." *Nader v. Blackwell*, 545 F.3d 459, 470 (6th Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)). A complaint's factual allegations "must be enough to raise a right to relief above the speculative level," and must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). A claim is plausible when it contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court is not required to accept as true mere legal conclusions unsupported by factual allegations. *Id.* (citing *Twombly*, 550 U.S. at 555).

## III.   LAW & ANALYSIS

### A.  Federal Constitutional Claims (Counts One, Two, and Three)

Plaintiff alleges three violations of his rights under the United States Constitution. He alleges that Defendants acted under color of state law when they unreasonably and unlawfully searched his home, seized his property, and deprived him of his liberty. (ECF No. 11 at ¶¶ 19-36). Before addressing these claims on their merits, this Court first evaluates which Defendants may have defenses that need to be addressed as a threshold matter.

For the purposes of liability under 42 U.S.C. § 1983, the Supreme Court has interpreted the word "person" broadly, such that, *inter alia*, municipalities are considered persons. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). A municipality may not be held liable under § 1983 "*solely* because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id*. at 691. Rather, a plaintiff must show that the municipality was, "through its deliberate conduct…the moving force behind the injury alleged." *Alman v. Reed*, 703 F.3d 887, 903 (6th Cir. 2013) (internal quotation omitted). To do this, a plaintiff must show that the municipality had a "policy or custom" that caused the violation of her rights. *Monell*, 436 U.S. at 694. The Sixth Circuit has outlined four methods a plaintiff may use to show the municipality had such a policy or custom:

> (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations.

*Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citation omitted). Then, in *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1985), the Supreme Court held that a municipality may be held liable under § 1983 for a single action by the municipality's policymakers. *Id*. at 479-80. The municipality is liable "for an official's unconstitutional action only when the official is the one who has the final authority to establish municipal policy with respect to the action ordered." *Feliciano v. City of Cleveland*, 988 F.2d 649, 655 (6th Cir. 1993) (quoting *Pembaur*, 475 U.S. at 481) (internal quotation marks omitted). An employee is a final policymaker for these purposes when the official's decisions are "final and unreviewable and are not constrained by the official policies of superior officials." *Feliciano*, 988 F.2d at 655. The authority to make final policy can come from custom, legislation, or delegation from other officials with final policymaking

authority. *Id.* To determine whether an official has final policymaking authority, courts resort to state law. *Id.*

Therefore, the question here is whether Plaintiff has pleaded sufficient facts to state a claim for *Monell* liability against the City of Reynoldsburg and to establish that Defendant O'Neill is a policymaker. Defendants argue that Plaintiff has failed to state a claim because, in short, he does not plead enough facts, but Defendants do not argue that O'Neill is not a policymaker under Ohio law. Defendants argue both that Plaintiff fails to state a claim sufficient to carry *Monell* liability because he has not alleged a sufficient constitutional injury; and, in the alternative, that Plaintiff has failed to make out a *Monell* claim against Reynoldsburg. Below, this Court discusses the question of constitutional injury; the question is whether Plaintiff has pleaded sufficient facts against these Defendants or whether they may be dismissed at the threshold.

Plaintiff has properly pleaded a claim against Defendants O'Neill and Reynoldsburg. In this case, Plaintiff alleges that Chief O'Neill and the City of Reynoldsburg tolerated Mauger's and Downard's repeated civil rights violations. (ECF No. 11 at ¶¶ 15, 16, 17). The facts alleged by Plaintiff, taken together with the record developed in Mauger's case,[3] sufficiently state a claim for which relief can be granted. Plaintiff does not appear to allege there was an official policy in Reynoldsburg, but he does not have to. The allegations he pleads in the Complaint satisfy the other elements laid out in *Burgess* because he alleges Defendants tolerated or

---

[3] It was this Court that sentenced Mauger. *See* 2:16-CR-91. This Court may take notice of proceedings in other courts of record. *Granader v. Public Bank*, 417 F.2d 75, 82-83 (6th Cir. 1969). In addition, this Court may "take notice that this [case] arises from the same facts that formed the basis for the judgment" in Mauger's case because it was this Court that sentenced Mauger. *Rodic v. Thistledown Racing Club, Inc.*, 615 F.2d 736, 738 (6th Cir. 1980) (taking notice of an Ohio Court of Common Pleas case where the same facts formed the basis of the federal case).

acquiesced to the rights violations, exhibited a policy of failing to train and supervise, and may have ratified the illegal actions. Plaintiff has also plausibly alleged that the course of action set by the policymaker was "the moving force behind or cause of" Plaintiff's harm. *Burgess*, 735 F.3d at 479 (citing *Pembaur*, 475 U.S. at 484-85). Plaintiff lays out sufficient facts to support the conclusion that the Chief of Police in Reynoldsburg is a policymaker, and Defendants do not contest this conclusion or offer citations to rebut it.

There will necessarily be discovery on these questions, but at this stage, this Court finds that Plaintiff has properly stated a claim for relief and the Amended Complaint survives the Rule 12 Motion to Dismiss. There is some evidence that O'Neill "implicitly authorized, approved, or knowingly acquiesced" in the actions of Mauger and Downard and this Court may, drawing inferences in Plaintiff's favor, conclude that O'Neill "failed subsequently to punish the responsible individuals." *Leach v. Shelby Cty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989) (citing *Hays v. Jefferson Cty., Ky.*, 668 F.2d 869, 874 (6th Cir. 1982)). And in cases such as these, "[c]ourts are not required to ignore the fact of life that politics can be and often are subtly but effectively promulgated by seemingly benign conduct." *Id.*

Therefore, Defendants O'Neill and Reynoldsburg's Motion to Dismiss is denied. The analysis below of the merits of Plaintiff's claims are therefore with respect to both the municipal defendants and Mauger. In other words, as to Plaintiff's § 1983 claims, no defendant is dismissed outright for failure to state claim.

### 1. Count One: Unreasonable Search & Seizure

Plaintiff's first count is for unreasonable search and seizure. It appears he makes these allegations based on the events surrounding his arrest and the subsequent search of his "person and premises." (ECF No. 11 at ¶ 22). To plead properly a Fourth Amendment violation as a

result of this search and seizure, Plaintiff would need to allege facts which, if true, would establish that the Defendants violated his Fourth Amendment rights and that the "alleged constitutional violation [was] taken under color of state law," such that it is a cognizable claim under 42 U.S.C. § 1983. *Garcia v. Dykstra,* 260 Fed. Appx. 887, 895 (6th Cir. 2008).

Before addressing these elements on the merits, Defendants have argued that Plaintiff's claim is time-barred, and so this Court first turns to the statute of limitations. Defendants argue that any search and seizure surrounding Plaintiff's arrest must have occurred on or before the arrest. (ECF No. 42 at 5). Plaintiff was first arrested on May 19, 2015. (ECF No. 11 at ¶ 6). Plaintiff also says, in his memorandum *contra*, that the "unlawful residence search based on a false search-warrant affidavit" was on November 7, 2014. (ECF No. 44 at 3).

In states like Ohio, which have "multiple statutes of limitations for personal injury actions, the appropriate state statute of limitations to borrow for claims brought under 42 U.S.C. § 1983 is the residual or general personal injury statute of limitations, not any statute of limitations for specific intentional torts." *Browning v. Pendleton*, 869 F.2d 989, 991 (6th Cir. 1989) (citing *Owens v. Okure*, 488 U.S. 235 (1989)). Under the Ohio Revised Code, the applicable statute of limitations is two years. O.R.C. § 2305.10. Therefore, because Plaintiff has indicated that the residence search in question was on November 7, 2014, and his Complaint was not filed until July 11, 2017, this claim is time-barred. As to Count One, Defendants' Motions to Dismiss are granted.

### 2. Count Two: Unconstitutional Taking of Property

#### a. *Fifth Amendment Claim*

Plaintiff's second count is for unconstitutional taking of property. Plaintiff alleges that the Defendants "unlawfully seize[d] Plaintiff's property without just compensation," and that

Defendants were acting under color of state law. (ECF No. 11 at ¶¶ 27, 28). Defendants argue first that this claim is time-barred: because the events must have taken place before the First Indictment (April 24, 2015) and the First Indictment was more than two years before the Complaint was filed (July 11, 2017), the statute of limitations has run. Defendants argue in the alternative that Plaintiff's claim is not ripe, because he has not exhausted state remedies as required by *Williamson County Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172 (1985).

As a threshold matter, the Fifth Amendment applies equally to uncompensated takings of personal property, not just real property. *Horne v. Dep't of Agriculture*, 135 S. Ct. 2419 (2015). In addition, the Fifth Amendment's prohibition on uncompensated takings applies equally to the states as to the federal government. *Chicago, B & Q. R. Co. v. City of Chicago*, 166 U.S. 226 (1897).

Taking Defendants' ripeness argument first, this defense must fail. In June 2019, the Supreme Court decided *Knick v. Twp. of Scott, Pennsylvania*, 139 S. Ct. 2162 (2019). In *Knick*, the Supreme Court explicitly overruled *Williamson County*, reasoning that "[f]ielty to the Takings Clause and our cases construing it requires overruling *Williamson County* and restoring takings claims to the full-fledged constitutional status the Framers envisioned…." *Id*. at 2170. After *Knick*, "a property owner has a claim for a violation of the Taking Clause as soon as a government takes his property for public use without paying for it." *Id*. The dual-track required by *Williamson County* whereby a property owner must first ripen her claims in state court is no longer a prerequisite to having claims heard in federal court. *Id*.

It appears quite plain to this Court that, with respect to Plaintiff's second count, *Knick* is on point. In their Supplemental Brief, Defendants Reynoldsburg and O'Neill concede that Plaintiff no longer needs to exhaust state remedies, but instead renew their argument in the

alternative that Plaintiff has failed to state a claim for which relief can be granted. (ECF No. 55).
Because Defendants' argument that Plaintiff's claim is not ripe has plainly been overruled by the
Supreme Court, this Court rejects this argument and concludes Plaintiff's claim is ripe and
Plaintiff does not need to seek a state-court remedy first.

Defendants have also argued that Plaintiff's claim is time-barred. This argument must fail
because Defendants have not started the proverbial clock at the right moment. To understand
this, consider the following three facts, drawn from the Amended Complaint construed in
Plaintiff's favor: (1) that Defendants entered his residence on the basis of a warrant they obtained
under false pretenses; (2) that Defendants did in fact seize Plaintiff's property; and (3) that
Plaintiff's conviction in part depended on this seized property. If Plaintiff had brought an action
to reclaim his property while serving his sentence, that suit would have been barred by *Heck*
because a "judgment in favor of the plaintiff would necessarily imply the invalidity of his
conviction or sentence." *Heck v. Humphrey*, 512 U.S. 477, 487. That is, if a court were to
determine that Plaintiff had the right to reclaim his property because of the manner in which it
was seized from him, such a determination "would necessarily imply the invalidity of his"
sentence. Therefore, logically, Plaintiff's claim could not have accrued at the property's initial
seizure.

Rather, this Court concludes that Plaintiff's claim accrued when the proceedings against
him terminated in his favor. For this conclusion, this Court relies on *McDonough v. Smith*, 139 S.
Ct. 2149 (2019). *McDonough* is discussed in greater detail below because its holding relates to
petitioners who allege an unconstitutional deprivation of their liberty. But there is nothing in
*McDonough* to indicate that its logic is necessarily limited to liberty claims. Rather, the Supreme
Court's conclusion in *McDonough*, as relevant to Plaintiff's claim for unconstitutional taking of

property, relies on a principle from malicious prosecution cases. In such a circumstance, the long-standing rule is that the petitioner cannot bring her claim until the proceedings have been terminated in her favor.

Invoking *Heck*, the Supreme Court explained in *McDonough* that this favorable termination requirement "is rooted in pragmatic concerns with avoiding parallel criminal and civil litigation over the same subject matter and the related possibility of conflicting civil and criminal judgments." *McDonough*, 139 S. Ct. at 2157. *See also Preiser v. Rodriguez*, 411 U.S. 475, 490 (1973) (citing a "strong policy requiring exhaustion of state remedies…to avoid unnecessary friction between the federal and state court systems"); *Younger v. Harris*, 401 U.S. 37, 43 (1971) (noting that "Congress has, subject to few exceptions, manifested a desire to permit state courts to try state cases free from interference by federal courts."). Had Plaintiff tried to raise his takings claim before his exoneration, it would have been barred by *Heck*. Therefore, logically, he did not have a "'complete and present cause of action' to bring a … challenge to criminal proceedings while those criminal proceedings were ongoing. Only once the criminal proceeding has ended in the defendant's favor, or a resulting conviction has been invalidated within the meaning of *Heck*, will the statute of limitations begin to run." *McDonough*, 139 S. Ct. at 2158 (citing *Wallace v. Kato*, 549 U.S. 384, 388 (2007)).

Nothing in the logic of *McDonough* is necessarily limited to a deprivation of liberty claim and therefore this Court finds the analogy applies to Plaintiff's claim for unconstitutional taking of property. By the logic in *McDonough*, Plaintiff's claim accrued when the prosecutor entered the *nolle prosequi* in December 2016. His Complaint, filed seven months later, was therefore timely.

On the face of the Complaint, this Court cannot rule out the possibility that Plaintiff's claim for unconstitutional taking of property would have been barred by *Heck* because a judgment in his favor would have undermined the then-valid conviction. If Defendants can show otherwise after discovery, this Court will entertain those arguments on a Motion for Summary Judgment.

     b.  *Fourth Amendment Claim*

   In the alternative, the unlawful seizure of personal property is equally cognizable as a Fourth Amendment claim. Generally, plaintiffs may plead in the alternative. *See* Fed. R. Civ. P. 8(d)(2). Either construction of Plaintiff's claim – under the Fifth Amendment or under the Fourth Amendment – is sufficient to survive Defendants' Motion. Either because Plaintiff has properly alleged a Fifth Amendment taking or because he has alleged a Fourth Amendment seizure, Defendants' Motion as to Count Two is denied.

   A Fourth Amendment seizure of property "occurs when there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109 (1984). In the Amended Complaint, Plaintiff properly pleads facts which, if proven, would constitute a Fourth Amendment seizure of his personal property. The items Plaintiff alleges were seized from his home and not returned are not the types of property that would necessarily be the subject of a Motion to Suppress. (ECF No. 11 at ¶ 12) (alleging the seizure of "various and sundry personal property, including $2800 in cash; $4350 in jewelry...; $1250 in laptop computers; and a collection of old coins valued at $300"). Therefore, if Plaintiff had contested the seizure of this property under the Fourth Amendment before he was *nolle prossed*, that suit would have been barred by *Heck*, by the logic outlined above.

This Court concludes that, whether under the Fourth Amendment or under the Fifth Amendment, Plaintiff has properly stated a claim for relief, alleging that Defendants unconstitutionally seized or effected a taking of his personal property. This claim accrued when the proceedings against him terminated in his favor with the *nolle prosequi*. Therefore, his Complaint was timely filed. Defendants' Motions to Dismiss are denied.

### 3. Count Three: Unconstitutional Taking of Liberty

Plaintiff's third count is for unconstitutional taking of liberty. He alleges that, under color of state law, Defendants acted unlawfully to take his liberty in violation of the Fifth Amendment. (ECF No. 11 at ¶¶32-36). The question is when such a claim begins to accrue. *See Wallace*, 549 U.S. at 388 (concluding that "the accrual date of a § 1983 cause of action is a question of federal law that it *not* resolved by reference to state law") (emphasis in the original). To determine whether Plaintiff's claim is time-barred, this Court must first determine what § 1983 cause of action he is bringing, and when that claim accrued.

This question was also just recently answered by the Supreme Court when it decided *McDonough*, building on *Wallace* and *Manuel v. Joliet*, 137 S. Ct. 911 (2017). *Wallace* concluded that "the standard rule" is that a plaintiff's § 1983 claim accrues "when the plaintiff has a complete and present cause of action." 549 U.S. at 388 (internal quotation omitted). Courts must first "identify the specific constitutional right at issue." *Manuel*, 137 S. Ct. at 920 (quoting *Albright v. Oliver*, 510 U.S 266, 271 (1994)) (internal quotation marks omitted). In *McDonough*, the plaintiff's fabricated-evidence claim was understood to arise under the Due Process Clause of the Fifth Amendment. *McDonough*, 139 S. Ct. at 2155. The *McDonough* court concluded that a plaintiff has a "complete and present cause of action…only once the criminal proceedings against him terminated in his favor." *Id*. at 2159.

With *McDonough* as with *Knick*, this Court informed the parties at a telephonic status conference that the outcome of the case had the potential to be dispositive in this matter. (ECF No. 53). In their supplemental brief filed after this Court resumed consideration of this matter, Defendants attempt to argue that *McDonough* does not apply to the instant matter because Plaintiff has not asserted a fabricated evidence claim. (ECF No. 55 at 3). To the contrary, this Court finds Plaintiff has done exactly this, stating in his Amended Complaint that "Mauger, alone and/or with others including Downard, caused false search warrants to be presented to judges…, executed search warrants he knew to be based on false information, including the Pippin search warrant…". (ECF No. 11 at ¶ 11). And because *McDonough* squarely addresses the statute of limitations in fabricated-evidence cases, this Court finds *McDonough* controls the analysis here.

As discussed above, *McDonough* held that where plaintiff presents a fabricated-evidence claim that results in false imprisonment, the statute of limitations begins to run only when the criminal proceedings terminate in the plaintiff's favor. This is squarely on-point with the facts of this case. The question, then, is whether Plaintiff filed his Complaint within two years of the proceedings terminating in his favor. This Court concludes he has. After the First Indictment (April 2015) and arrest (May 2015), Plaintiff was sentenced in September 2017. He was *nolle prossed* in December 2016 and filed his Complaint in July 2017. The proceedings against him that are the subject of this litigation are the proceedings that terminated in his favor with the *nolle prosequi* in December 2016. Because Plaintiff filed his Complaint within two years of the *nolle prosequi*, Count III is not time-barred and Defendants' Motion is denied.

The final issue here is that the First Indictment and the Second Indictment have a paragraph in common. Therefore, inasmuch as Plaintiff avers he is challenging only the First

Indictment, he is also, by the letter of the indictments, challenging the paragraph in the Second Indictment to which he pleaded guilty. Defendants argue that because Plaintiff pleaded guilty, he has admitted the facts of the common paragraph and therefore is estopped from challenging it.

This will be an issue for discovery. The question is where the information for that common paragraph came from. To the extent that the information that forms the basis of the common paragraph comes from an independent and valid source – a non-poisonous tree, in Fourth Amendment terms – Plaintiff may maintain that the First Indictment was fabricated while nevertheless not contesting the source of his guilty plea. But if the common paragraph was also fabricated, Plaintiff's claim *as to that paragraph* is barred because of his guilty plea. In this case, the question would be one of damages, rather than liability. These are questions that can only be answered with discovery. At this stage, it suffices that Plaintiff has stated a claim for relief notwithstanding his guilty plea because he has outlined how the information in the common paragraph could have been fabricated. Defendants may rebut this with a Motion for Summary Judgment.

**B.  Ohio Constitution Claims (Counts One, Two, Three)**

In his Complaint, Plaintiff alleges violations of the United States Constitution and appears simultaneously to allege violations of the Ohio State Constitution. (ECF No. 11 at ¶¶22, 28, 29, 31, 33, 34, 36). Plaintiff specifically cites Article I, Sections 1 and 19 of the Ohio Constitution.

Ohio courts have held that a "constitutional provision is self-executing when it is complete in itself and becomes operative without the aid of supplemental or enabling legislation." *State v. Williams*, 728 N.E. 2d 342, 352. The test is whether "the words of a constitutional provision [are] sufficiently precise in order to provide clear guidance to courts

with respect to their application" for a provision to be self-executing. *Id*. Accordingly, Ohio courts have held that Article I, Section 1 is not self-executing. Concluding that, for example, "[h]appiness is such a broad concept that no court could ever adequately protect every individual's happiness without transgressing the happiness of another," the *Williams* court found that Article I, Section 1 is not self-executing. *Id*. at 355-56.

By this test, the language of Section 19 would seem sufficiently clear and definite to provide courts adequate guidance and render the provision self-executing. In dicta, the *Williams* court suggests Section 19 might be self-executing. *Williams*, 728 N.E. 2d. at 354 (comparing the protection of property in Section 19 to the protection of happiness in Section 1). Another court examined a plaintiff's takings claim under both the Fifth Amendment and Section 19, and thereby at least assuming without deciding that Section 19 is self-executing. *Brkic v. Cleveland*, 124 Ohio App. 3d. 271, 279 (1997). More often, cases in Ohio dispose of the plaintiff's takings claim because the plaintiff has insufficiently exhausted state remedies but, per *Knick*, it is unclear that this is any longer a requirement. Defendants implicitly concede as much, rooting their objection to the Section 19 claim in Plaintiff's failure to seek mandamus rather than an argument that the provision is not self-executing. (ECF No. 42 at 6-7).

For these reasons, Plaintiff's claims under Article I, Section 1 of the Ohio Constitution are dismissed, but as to Article I, Section 19, Defendants' Motion is denied.

## C. Section 1985 Conspiracy Claim (Count Five)

Plaintiff alleges Defendants O'Neill and Reynoldsburg are liable for violations of 42 U.S.C. § 1985 for conspiring to interfere with his civil rights. Section 1985 creates "a cause of action for a conspiracy between two or more persons to deprive another of the equal protection of the laws." *Jackson v. City of Cleveland*, 925 F.3d 793, 817 (6th Cir. 2019). The general rule is

that "in civil conspiracy cases[,] a corporation cannot conspire with its own agents or employees." *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. Of Educ.*, 926 F.2d 505, 509 (6th Cir. 1991). This is because if "all of the defendants are members of the same collective entity, there are not two separate 'people' to form a conspiracy." *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839-40 (6th Cir. 1994). This is true whether the claim is brought under § 1985(2) or § 1985(3). *Jackson*, 925 F.3d at 817. Because Defendants O'Neill and Reynoldsburg are part of the same corporate entity, the intra-corporate conspiracy doctrine bars Plaintiff's suit. Accordingly, Count Five is dismissed. *Johnson*, 40 F.3d AT 839-40.

### D. Tort Claims (Counts Four, Six, Seven, Eight, Nine, Ten)

Plaintiff alleges six torts. Again, this Court first considers whether these claims may stand against all of the Defendants, as a threshold matter.

On these claims, Defendant O'Neill is immune by statute. The Ohio Revised Code provides that in "a civil action brought against…an employee of a political subdivision to recover damages for…loss to…property allegedly caused by an act or omission in connection with a governmental or proprietary function, the following defenses or immunities may be asserted to establish nonliability…" O.R.C. 2744.03. The provision continues to enumerate that "the employee is immune from liability unless one of the following applies: (a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities; (b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner." O.R.C. 2274.03(A)(6). Plaintiff specifically alleges that Defendant O'Neill was acting under color of law, and Plaintiff does not allege that O'Neill himself acted "with malicious purpose, in bad faith, or in a wanton or reckless manner." There are no facts in the Complaint to support that O'Neill *himself* engaged in any such behavior.

Defendant O'Neill is therefore immune by statute, and as to Counts Four, Six, Seven, Eight, Nine, and Ten his Motion to Dismiss is granted.

Defendant Mauger argues that Plaintiff's claims are time barred. The Ohio Revised Code specifies that actions for damages against "a political subdivision to recover damages…shall be brought within two years after the cause of action accrues, or within any applicable shorter period of time for bringing the action provided by the Revised Code." O.R.C. § 2744.04 (A). Then, in sub-section (B), the statute provides that a complaint "filed in a civil action against a political subdivision *or an employee* of a political subdivision to recover damages…". O.R.C. § 2744.04(B) (emphasis supplied). As a matter of statutory interpretation, this Court would have concluded that Mauger may avail himself of (B) but not (A) because he is not himself a "political subdivision" and, giving meaning to every word in a statute while understanding that the legislature specifically chooses the words it means, logically (B) means to include employees while (A) means to refer only to political subdivisions.

Somewhat inexplicably, this seems not to be the practice of at least some Ohio courts interpreting this provision. Instead, these Ohio courts have read even (A) to include employees. In *Read v. Fairview Park*, the Eighth District Court of Appeals concluded that "the specific two-year statute of limitations in R.C. 2744.04(A) applies to abuse-of-process claims *against political subdivisions and their employees*." 146 Ohio App. 3d 15, 19 (2001) (emphasis in original). Subsequent courts agreed and expanded this interpretation, concluding that the specific statute of limitations in 2744.04 "prevails over the *general* statutes of limitations contained in R.C. Chapter 2305." *Davis v. Clark Cty. Bd. of Commrs.*, 2013-Ohio-2758, ¶ 23 (emphasis in original). The *Davis* court also concluded that § 2744.04(A) "applies to political subdivisions and their employees." *Id. See also Pearson v. Columbus*, 2014-Ohio-5563, ¶ 10.

There is some dispute within the Ohio courts about the reach of *Read*. In *Dolan v. Glouster*, the Fourth District "assume[d] *Read* does apply," while detailing its shortcomings in a footnote: "the Ohio Supreme Court does not appear to have ruled on that proposition and the *Read* case is binding only in the Eighth district. … There has been some expression of doubt in at least one other district as to whether it applies." 2014-Ohio-2017, n.20. Indeed, the dissent in *Davis* argues that, as a matter of statutory interpretation, the majority reached an absurd result by reading (A) and (B) as though the language of both included employees: "The legislature knew it could include employees of the political subdivision in subpart (A) since it did so in subpart (B). I have to assume that the failure to include such language was purposeful and that R.C. 2744.04(A) does not affect employees of a political subdivision." *Davis*, 2013-Ohio-2758, ¶36 (Froelich, J., concurring in part and dissenting in part).

This is not a question this Court can resolve in this matter, not least because it has not been briefed by the parties – but also because these state law claims are only being considered in this Court as a matter of supplemental jurisdiction.

### 1. Count Four: Deprivation of Right to Redress Grievances in Court

Plaintiff alleged that Defendants retaliated against him for filing suit against them by unlawfully depriving him of his right to redress grievances in court. In the Sixth Circuit, there are three elements to a retaliation claim:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (citing *Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir. 1998); *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 406 (6th Cir. 1998); *Penny v. United Parcel Serv.*, 128 F.3d 408, 417 (6th Cir. 1997); *Yellow Freight Sys., Inc. v. Reich*, 27

F.3d 1133, 1138 (6th Cir. 1994)). The First Amendment protects "the right of the people . . . to petition the Government for a redress of grievances." U.S. Const. Amend. I. Thus, in the Sixth Circuit, "[t]he threshold question in a right-to-petition case under the First Amendment caselaw [sic] of this and other circuits is therefore 'whether the plaintiff's conduct deserves constitutional protection.'" *Campbell v. PMI Food Equip. Grp.*, 509 F.3d 776, 789 (6th Cir. 2007) (quoting *Reichert v. Draud*, 701 F.2d 1168, 1170 (6th Cir. 1983)). The Sixth Circuit has consistently held that a petition warrants First Amendment protection. *See Campbell v. PMI Food Equip. Grp.*, 509 F.3d 776, 789 (6th Cir. 2007) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 387 (6th Cir. 1999); *Foraker v. Chaffinch*, 501 F.3d 231, 235 (3d Cir. 2007)) ("The plain language of the First Amendment makes clear that a 'petition' triggers the [first] amendment's protections.").

There are two types of right-to-petition claims that the Sixth Circuit has recognized: right-to-speech claims and right-to-meaningful-access claims. In a right-to-speech claim, the plaintiff must allege that the government took a specific, concrete action or threat that had a "chilling effect" and denied plaintiff's right to free speech protected by the Petition Clause. *See Laird v. Tatum*, 408 U.S. 1, 11, 13-14 (1972); *See also United Pub. Workers of Am. (C.I.O.) v. Mitchell*, 330 U.S. 75, 89 (1947). In a right-to-meaningful-access claim, the plaintiff must establish that the defendant denied him or her meaningful access to the courts, preventing the plaintiff from airing his or her grievances before the courts. *See EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 863 (6th Cir. 2012) (citing *John L. v. Adams*, 959 F.2d 228, 231-32 (6th Cir. 1992); *Silva v. Di Vittorio*, 658 F.3d 1090, 1101-02 (9th Cir. 2011); *Snyder v. Nolen*, 380 F.3d 279, 291 (7th Cir. 2004)). As a threshold matter, it is not clear which of these claims Plaintiff is attempting to raise in his Complaint.

In examining Plaintiff's claim of retaliatory denial of his right to petition the court for grievances, this Court first looks at whether Plaintiff engaged in protected conduct. Plaintiff pleaded that he made a petition by presenting a claim for damages to Defendant City of Reynoldsburg. (ECF No. 11 at ¶ 38). However, Plaintiff did not plead any "chilling effect" stemming from Defendants' conduct, so there is no right-to-speech claim. Plaintiff instead alleged that he was deprived of his right to access the courts to redress his grievances but provides only a legal conclusion with no supporting factual evidence. (*Id.* at ¶ 41). Next, this Court looks to whether Defendants committed an adverse action against Plaintiff that deterred him from pursuing his petition. Plaintiff pleaded that Defendants acted adversely to him by collaborating to re-indict him but pleaded no facts suggesting that this action reasonably deterred him from pursuing his claim. (*Id.* at ¶ 40). Lastly, this Court determines whether there is a causal connection between Plaintiff's protected conduct and the adverse action committed against him. Plaintiff pleaded that "[Defendants] collaborated regarding Plaintiff's pursuit of satisfaction of his claim and decided to re-indict Plaintiff as a mean [sic] of dissuading him from obtaining satisfaction of his claim in court." (*Id.*). However, he pleaded no facts to support a connection between the indictment and his claim. Also, he admitted in his memorandum contra that the Second Indictment followed a controlled bUy in 2015. (ECF No. 44 at 4). Because Plaintiff has failed to allege sufficient facts to support his legal conclusions, Defendants' Motions are granted.

### 2. Count Six: Invasion of Privacy

Plaintiff alleges that Defendants, acting under color of state law, violated his right to privacy. The Sixth Circuit requires a plaintiff pleading a § 1983 claim to establish that: (1) the defendant acted under the color of state law; and (2) the defendant's offending conduct deprived plaintiff of a federally-guaranteed right. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir.

2008) (quoting *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998)). The Supreme Court recognizes two types of privacy rights as protected by the constitution: the "independence in making certain kinds of important decisions" and the "interest in avoiding disclosure of personal matters." *Id.* at 440 (quoting *Whalen v. Roe*, 429 U.S. 589, 599-600, 603-04 (1977)).

Invasion of privacy is an intentional tort. Therefore, as above, Chief O'Neill is immune per O.R.C. § 2744.03(A)(6). As to Defendant Mauger, Plaintiff has failed to plead specific facts to indicate that either of his specific privacy rights as recognized by *Whalen* were abridged by Mauger. Plaintiff alleged that Defendants "wrongfully intrude[d] into Plaintiff's life, liberty, home, family, and/or private activities" but offered no facts to support this assertion and did not plead that either of the recognized rights to privacy were violated. (*Id.*). Therefore, Plaintiff has failed to state an adequate claim for invasion of privacy and Defendants' Motions are granted.

### 3. Count Seven: False Light

Plaintiff alleges Defendants communicated and publicized his arrest and that, "as a consequence of the publicity," Plaintiff suffered damages and was "seriously aggrieved and offended in the eyes of the community." (ECF No. 11 at ¶¶ 56-60). In Ohio, a plaintiff must establish a *prima facie* False Light Invasion of Privacy claim that: "(a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." *Welling v. Weinfeld*, 2007-Ohio-2351, ¶ 61.

False Light is an intentional tort. Therefore, as above, Chief O'Neill is immune per O.R.C. § 2744.03(A)(6). As above, this claim may be time-barred as to Mauger, even if this Court does not apply the "political subdivision" statute of limitations to Mauger. Without specific facts from the parties, this Court cannot know the dates on which the allegedly false

statements were made. Plaintiff had the burden of rebutting Mauger's statute of limitations

argument, and he failed to do so. In the alternative, Plaintiff failed to plead specific facts to

indicate that the statements the officials made were knowingly false: just because Plaintiff

alleges he was falsely arrested does not compel the conclusion that the officers knowingly made

false statements about his arrest. For these reasons, Defendants' Motions as to this count are

granted.

### 4. Count Eight: Intentional Infliction of Emotional Distress

Plaintiff argued that Defendants intentionally caused him severe emotional distress

through their conduct. In Ohio, a plaintiff claiming IIED must plead facts which establish that:

> (1) the defendant either intended to cause emotional distress or knew or should have
> known that actions taken would result in serious emotional distress to the plaintiff; (2) the
> defendant's conduct was extreme and outrageous; (3) the defendant's actions were the
> proximate cause of the plaintiff's psychic injury; and (4) the mental anguish suffered by
> the plaintiff was serious.

*Siskie v. Old Dominion Freight Line, Inc.*, 170 F. Supp. 3d 1017, 1027 (N.D. Ohio 2016) (citing

*Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995)).

IIED is an intentional tort. As above, Chief O'Neill is immune by statute. Mauger argues

Plaintiff's claim is time-barred. Again, Plaintiff has failed to rebut the statute of limitations

argument by providing specific facts to support the allegation that his IIED claim is not time-

barred. This Court surmises that the date on which Defendants could have *intentionally* caused

Plaintiff emotional distress was on or about the date of his arrest, which was more than two years

before this suit was filed. Without a more specific pleading from Plaintiff, he cannot properly

allege a claim for IIED. In the alternative, Plaintiff has failed to plead sufficient facts to

overcome a Rule 12 motion. Plaintiff's Complaint is mostly legal conclusions, that Defendants'

conduct was "extreme and outrageous" and that Defendants' conduct was the proximate cause of

his emotional distress. (ECF No. 11 at ¶¶63, 64). Plaintiff's conclusory legal allegations do not provide adequate factual support for his pleadings and, as a result, Defendants' Motions to Dismiss are granted.

### 5. Count Nine: Loss of Consortium

Plaintiff also alleges Defendants' conduct injured him by depriving him of his relationship with his wife. A loss of consortium claim requires a plaintiff to prove that they were deprived of "society, services, sexual relations, and conjugal affection, which includes companionship, comfort, love and solace." *Bowen v. Kil-Kare, Inc.* (1992), 63 Ohio St. 3d. 84, 92-93. However, the proper plaintiff for a loss of consortium claim is not brought by the plaintiff who was herself injured; rather, the claim is more appropriately brought by the *spouse* of the injured. The Supreme Court of Ohio explained this in *Bowen*, noting that "a claim for loss of consortium is derivative in that the claim is dependent upon the defendant's having committed a legally cognizable tort upon the spouse who suffers a bodily injury." *Id.* at 93.

In the instant case, Plaintiff was the injured party, and his spouse is not a party to this suit. Plaintiff cannot bring a claim for loss of consortium on his spouse's behalf. Because Plaintiff has failed to state a claim for which relief can be granted, Defendants' Motions as to this count are granted.

### 6. Count Ten: Conversion

Plaintiff also alleges Defendants are liable for the tort of conversion because Defendants unlawfully seized Plaintiff's property and "used such property for public and/or personal purposes without authorization, consent, and/or permission" of Plaintiff. (ECF No. 11 at ¶ 74). For a Conversion claim in Ohio, a plaintiff must establish that: (1) the plaintiff owned or had the right to possess the property when it was converted; (2) the defendant converted the property

either through a wrongful act or by violating plaintiff's property rights; and (3) that the plaintiff was harmed by the conversion and thus is entitled to damages. *6750 BMS, L.L.C. v. Drentlau*, 2016-Ohio-1385, ¶ 29.

Chief O'Neill is immune by statute. Defendant Mauger argues that Plaintiff's claim is time-barred. As to this claim, this Court can squarely address this argument on the merits because regardless of whether Mauger can avail himself of the political subdivision rule, the statute is clear that the statute of limitations is "two years *after the cause of action accrues*." O.R.C. § 2744.04(A) (emphasis added). Per the analysis above of Plaintiff's takings claim, his claim for conversion did not accrue until the proceedings terminated in his favor. And on this count, Plaintiff has alleged sufficient facts to state a claim: for example, he details the items he alleges were taken and not returned. In addition, even under the most stringent reading of the statute of limitations, Plaintiff's motion was timely because it was filed approximately seven months after the *nolle prosequi*. Defendant Mauger's Motion is denied.

### D. Ohio Statutory Claims (Counts Eleven & Twelve)

Plaintiff brings two claims under the Ohio Revised Code: one for Civil Damages under O.R.C. 2307.60, and one for Indemnification under O.R.C. 2744.07(A). For Civil Damages, the statute provides that "[a]nyone injured in person or property by a criminal act has, and may recover full damages in, a civil action…". O.R.C. 2307.60. And the Indemnification statute provides that "a political subdivision shall provide for the defense of an employee…in any civil action or proceeding which contains an allegation for damages for injury, death, or loss to person or property caused by an act or omission in connection with a governmental or proprietary function." O.R.C. 2744.07(A).

Plaintiff's Indemnification claim relies on facts yet to be determined. As above, Plaintiff has adequately stated a claim to survive the Rule 12 motion. However, he has not – and indeed, could not, at the Motion to Dismiss stage – establish all the elements required by these statutory provisions. This is not uncommon when plaintiffs bring claims for indemnification, "depending as they do on the favorable adjudication of underlying tort claims." *Jackson v. City of Cleveland*, 925 F.3d 793, 808 (discussing 2744.07(B)). Essentially, Plaintiff's claim for indemnification is not ripe. The parties agree on this much. Defendants assert there is no third-party claim for Indemnification, but also argue, in the alternative, that any such right would attach after the judgment is final (ECF No. 42 at 23). Plaintiff argues he should be allowed to "proceed against the City in the event of judgment against Mauger." (ECF No. 44 at 8). For these reasons, Plaintiff's claim for Indemnification is not dismissed, but its final determination will depend on the adjudication of the torts claims and any intervening change in Ohio state law. *See Jackson*, 925 F.3d at 806-09 (discussing the ripeness of indemnification claims and concluding that these must "not be adjudicated on the merits at the pleading stage, given the unsettled condition of state law.").

Plaintiff has also stated a claim for civil damages. Defendants O'Neill and Reynoldsburg argue that because there is only a cause of action following injury by a criminal act, and there has been no criminal act, Plaintiff has failed to state a claim. Defendant Mauger does not appear to make an argument that Plaintiff cannot bring this Civil Damages claim against him; by contrast, there *has* been a criminal act committed by Mauger. Therefore, with respect to this count, Defendants O'Neill and Reynoldsburg are dismissed, but Defendant Mauger is not.

# IV.    CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss are granted in part and denied in part. Plaintiff's first count for unreasonable search and seizure under the U.S. Constitution is time barred and so Defendants' Motion to Dismiss is **GRANTED** . Plaintiff's second and third counts for violations of his U.S. constitutional rights all properly state claims against all remaining defendants and therefore as to Counts Two and Three Defendants' Motions are **DENIED**. As to the Ohio Constitutional claims asserted in Counts One, Two and Three, Defendants' Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART** as discussed above. Plaintiff's state law tort claims fail to state a claim against Defendant O'Neill because he is immune by statute. Defendant O'Neill's Motion to Dismiss is **GRANTED** as to Counts Four, Six, Seven, Eight, Nine, and Ten. Because of the intra-corporate conspiracy doctrine, all Defendants' Motion as to Count Five is **GRANTED**. Most of Plaintiff's state law torts claims fail to state a claim against Defendant Mauger because Plaintiff alleges legal conclusions and not sufficient facts. As a result, Defendant Mauger's Motion to Dismiss is **GRANTED** as to Counts Four, Six, Seven, Eight, and Nine. Defendant Mauger's Motion to Dismiss is **DENIED** as to Count Ten because Plaintiff properly states a claim for relief. Defendants O'Neill and Reynoldsburg's Motion to Dismiss as to Count Eleven is **GRANTED** because Plaintiff fails to state a claim for relief; however, Plaintiff maintains a claim for civil damages against Defendant Mauger. Count Twelve for Indemnification is premature and therefore held in abeyance pending the adjudication of the underlying facts, but no Motion to Dismiss is granted at this time as to Count Twelve

Therefore, the remaining claims are: Counts One (as to claims under Article I Section 19 of the Ohio Constitution only against all remaining defendants), Two, and Three (against all

remaining defendants); Counts Ten, Eleven (Mauger only); with Count Twelve being held in abeyance. The claims being dismissed are: Count One (in part against all remaining defendants); Counts Four, Five, Six, Seven, Eight, and Nine (all remaining defendants); Count Ten (O'Neill only, no claim brought as to the city); and Count Eleven (Reynoldsburg and O'Neill).

**IT IS SO ORDERED.**

                **s/Algenon L. Marbley**
                **ALGENON L. MARBLEY**
                **CHIEF UNITED STATES DISTRICT JUDGE**

**DATE:  September 27, 2019**